[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from a decision of the defendant Zoning Board of Appeals of the City of Stamford (hereinafter, "defendant or ZBA") denying an application to amend a special exception so as to allow a temporary tennis bubble on property owned by the plaintiff Twin Lakes, Inc. (hereinafter, "Twin Lakes or plaintiff") CT Page 3989
Twin Lakes operates a swim and tennis club on approximately 16.096 acres under special exceptions granted in 1965 and 1969. A permit was issued by the building department for the erection of the initial bubble in December 1969. The plaintiff has erected a tennis bubble every winter thereafter.
In 1987 the zoning enforcement officer claimed for the first time that the bubble was not authorized under the special exceptions previously granted. The ZBA upheld the zoning enforcement officer's determination, but urged the plaintiff to clear up the matter by filing the application which is the subject of this appeal. Thus, in 1989, the plaintiff submitted this application seeking to amend the prior special exceptions so as clearly to permit the continuation of the bubble.
As required by the Stamford zoning regulations of all applications for special exception the city Planning Board reviewed the plaintiff's application and recommended approval. Later in 1989 a public hearing was held by the ZBA on the plaintiff's application to amend the special exceptions. At the hearing, testimony was presented in support of and in opposition. After the hearing, three members of the ZBA voted to approve the application and two members voted to deny. In disregard of the majority vote to approve the application, a decision was issued by ZBA denying the application, stating that:
"The board finds that the nature and intensity of the use in relation to its site in a residential area is not in harmony with the general purpose and intent of the zoning regulations". It is from the ZBA's denial of this application that this appeal arises.
The issue in this case is whether four votes or a majority vote of the members of the ZBA is required to grant a special exception where the Planning Board had previously recommended approval.
The issue is framed by 19.3 3C of the zoning regulations which provides as follows:
 All applications for special exception shall be referred to the Planning Board for an advisory report and acted on in the same manner as provided under 19, 2.3, d of these Regulations. If the Planning Board recommends denial of an application for special exception, such special exception shall not be granted CT Page 3990 except by the affirmative vote of four members of the reviewing board.
The plaintiff argues that Stamford zoning issues are generally governed by a special act of the legislature which constitutes the Stamford Charter and which authorizes adoption of zoning regulations by the city. The plaintiff further argues that Stamford has not adopted the provisions of Chapter 124 of the General Statutes regarding zoning and therefore 8-7 which requires four concurring votes to pass a special exception does not apply in the absence of such adoption.
The plaintiff expresses its position as follows: "The defendant cannot bypass its own zoning regulations on the issue of the voting requirements necessary to approve an application for special exception." The plaintiff concludes that by necessary implication only a majority vote of the ZBA is required to grant a special exception where prior approval of the application has been given by the Planning Board.
The defendant argues that notwithstanding 19.3.3.C,8-7 applies to the ZBA when it grants a special exception and therefore a concurring vote of four members is required. It is conceded that Stamford has not adopted the provisions of Chapter 124 of the General Statutes. Hall v. Planning Board, 2 Conn. App. 49, 50 (1984). Instead, planning and zoning is governed by the Stamford city charter.
As the Supreme Court stated in the leading case of Sheridan v. Planning Board, 159 Conn. 1, 4 (1969) "With the exception of certain provisions contained in Chapters 124 and 126 of the General Statutes . . . . planning and zoning in Stamford are governed by 26 spec. laws, 1228, no. 619, hereinafter referred to as the Stamford Charter (1953), rather than by the General Statutes. The court went on to state that "General Statutes 8-10 provides that General Statutes8-8 and 8-9 shall govern appeals from the final zoning authority of any municipality whether or not such municipality has adopted the provisions of Chapter 124 of the General Statutes. . . ." Id. at 11. In contrast, "the provisions of 8-7 do not apply . . . to any municipality which has not adopted the general enabling act provided in 8-1". Puskarz v. Zoning Board of Appeals, 155 Conn. 360, 365 (1967). The basis for this conclusion was expressed as follows: "Chapter 124 of the General Statutes (8-1 — 8-13) is a general zoning enabling act. `Any municipality may by vote of its legislative body, adopt the provisions of this chapter and exercise through a zoning commission the powers granted hereunder.' (8-1. We have construed this statute as requiring of the municipality's legislative body an affirmative CT Page 3991 act in which the intent to utilize the zoning provision of the general enabling act is expressed". Id. at 364. Therefore, because the zoning regulations contain no provision corresponding to the four-vote requirement of 8-7 except where the planning board recommends denial, and because Stamford has failed to adopt the voting provision of 8-7 by an affirmative act, the four-vote requirement of 8-7 does not apply to Stamford special exceptions.
The defendant argues that although the zoning board operates under a special act, the ZBA operates under the powers given to zoning boards of appeal by general statutes. In support of this argument, the defendant points to Section C-6-50-1 of the Stamford Charter which provides in pertinent part that "the provisions of the General Statutes pertaining to zoning appeals shall apply to Stamford except so far as inconsistent with the specific provision of this charter". Whether this position has merit depends upon whether an application for a special exception is a "zoning appeal". While the defendant indulges in a gratuitous study of the legislative history of the ZBA and the pertinent regulations, it offers no legal authority for its position. Alternatively, the defendant argues that the title of the ZBA indicates that the board's statutory function is to hear and decide "appeals" and therefore when Charter C-6-50-1 states that the provisions of the General Statutes pertaining to zoning appeals shall apply to Stamford, it includes appeals under 8-7.
In the context in which the term "zoning appeal" is used in the Charter, it means "the invoking of the judicial power to determine a legal injury", Colonial Beacon Oil Co. v. Zoning Board of Appeals, 128 Conn. 351, 354 (emphasis supplied.) "The word `appeal' in itself means the removal of a cause from a lower to a higher tribunal for retrial or review. Turrill v. Erskine, 134 Conn. 16, 21. Thus, the charter language refers to 8-8, 8-9 and 8-10 and not 8-7. Accordingly, an application for a special exception is not a "zoning appeal" within the meaning of this charter provision. Even 19.3.3 refers to it as an "application" and not an "appeal".
Next, the defendant relies on Mabank Corp. v. Zoning Board of Appeals, 143 Conn. 132. Such reliance is misplaced. While as the defendant points out, the court in Mabank held that "the Stamford charter confers the powers authorized by the General Statutes for zoning boards of appeal upon the board of zoning appeals of Stamford." Id. 135, the court meant the substantive powers to hear and decide variances which the general statutes gave zoning boards of appeal. The case had nothing to do with 8-7. CT Page 3992
The defendant also relies heavily on St. John's Catholic Church v. Board of Adjustment or Appeals, 125 Conn. 714. This case cannot be applied to this controversy for the following reason. The case involved 428 of the Revision of 1930 which was the predecessor of 8-7. In 1939 when the case was decided, 428 applied to Stamford simply because the optional feature of 8-1 did not come into existence until 121i was enacted by the legislature in 1947.
The plaintiff compares zoning regulations section 19.1.2[1]
and 19.1.4[2] which concern the review of administrative orders and variances respectively, with 19.1-5[3], which deals with special exceptions and concludes that unlike the former two sections, the latter contains no reference to 8-7. Therefore, in the absence of a negative recommendation from the Planning Board only a majority vote in favor of the application is needed.
Neither 19.1.5 nor 19-3 make any reference to the voting requirements set forth in 8-7.
From the foregoing, it is apparent that the voting requirement necessary to approve an application for a special exception is controlled by the zoning regulations of the City of Stamford and not 8-7. In this case, since the Planning Board recommended approval of the application, all that was necessary was a majority vote of the ZBA. Consequently, the appeal is sustained. However, since the defendant misconstrued the legal effect of its affirmative majority vote, pursuant to 8-8 (1) the defendant is ordered to proceed according to law, Bogue v. Zoning Board of Appeals, 165 Conn. 749,756, including compliance with 19-3 of the zoning regulations, Gervasi v. Town Plan and Zoning Commission, 184 Conn. 450, 454.
MOTTOLESE, J.
ENDNOTES